UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CHRISTOPHER and KRISTINE SCHOEMANN, on behalf of themselves as parents and natural guardians, and their minor son, Jackson Schoemann, | Civil No. 06-313 (PJS/RLE) |
| Plaintiffs, | |
| v. | ORDER GRANTING MOTION TO TRANSFER |
| EXCELLUS HEALTH PLAN, INC., d/b/a BlueCross BlueShield of Central New York, | |
| Defendant. | |

Sheila A. Bjorklund, LOMMEN, ABDO, COLE, KING & STAGEBERG, PA, 80 South Eighth Street, Suite 2000, Minneapolis, MN 55402, for plaintiffs.

Doreen A. Mohs, RIDER BENNETT LLP, 33 South Sixth Street, Suite 4900, Minneapolis, MN 55402, for defendant.

Defendant Excellus Health Plan, Inc. ("Excellus") provided medical insurance to plaintiffs Christopher and Kristine Schoemann ("the Schoemanns") under an employer-sponsored health-benefit plan. In this action, the Schoemanns seek review of Excellus's decision not to cover certain medical services received by the Schoemanns' son, Jackson. The plan under which the Schoemanns were insured included a forum-selection clause that required disputes arising under the plan to be litigated in New York. Excellus now seeks to enforce that forum-selection clause by moving to dismiss this action or, in the alternative, to transfer it to the United States District Court for the Western District of New York.

BACKGROUND

Excellus is a New York corporation headquartered in Rochester, New York.  Cox Aff. ¶ 2.  Christopher Schoemann is employed by the law firm of Bond Schoeneck & King, PLLC ("BS&K").  Compl. ¶ 4.  BS&K is headquartered in Syracuse, New York, but it has several other offices in the state of New York, as well as small offices in Florida and Kansas.  At the time of the events giving rise to this action, Christopher Schoemann was employed by BS&K's Kansas office, but lived with his family in Minnesota.  Compl. ¶¶ 1, 4.  The Schoemanns moved to Mission Hills, Kansas in 2005.  Cox Aff. ¶ 4.

Excellus does business as BlueCross BlueShield of Central New York.  BS&K contracted with Excellus to provide health insurance to its employees under a PPO Group Certificate of Coverage ("the Plan").  Compl. ¶ 2-3; *see* Cox Aff. Ex. A.  The parties agree that the Plan was a welfare-benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq.  Christopher Schoemann elected to participate in the Plan, which provided coverage to him and his dependents, including Jackson.  Compl. ¶ 4.

In 2002, Jackson was diagnosed with pervasive developmental disorder-not otherwise specified (often referred to as "autism spectrum disorder").  *Id*. ¶ 6.  The Schoemanns arranged for Jackson to receive a course of treatment known as intensive early intervention behavioral therapy ("IEIBT").  *Id*. ¶¶ 9-10.  IEIBT involves intensive therapy conducted in the patient's home over a two- or three-year period.  *Id*. ¶ 9.  The treatment was provided to Jackson in Minnesota by LIFE-Midwest.  *Id*. ¶ 13.

LIFE-Midwest initially submitted billings to Excellus's New York office.  *Id*.  At some point, Excellus directed LIFE-Midwest to submit billings to BlueCross BlueShield of Minnesota.

*Id*.  At oral argument, defense counsel explained that when a beneficiary resides in another state, it is common for BlueCross BlueShield affiliates, such as Excellus, to have the BlueCross BlueShield affiliate in the beneficiary's state handle billing, because that affiliate has contracts with health-care providers in the state.  But decisions regarding coverage continue to be made by the plan administrator, and not by the local affiliate.  *See* Cox Aff. ¶ 2.

Shortly after Jackson began receiving IEIBT, disputes arose between Excellus and the Schoemanns over the extent to which IEIBT was covered under the Plan.  Compl. ¶¶ 10-12, 14-16.  Excellus took various positions, the Schoemanns pursued various administrative challenges, and, at the end of the day, Excellus agreed to cover some but not all of Jackson's IEIBT.  *Id*. ¶ 16.  The Schoemanns were unhappy and filed this lawsuit in January 2006.  The Schoemanns seek judicial review of Excellus's decision under 29 U.S.C. § 1132(a)(1)(B), and they bring other claims against the company.

The question before the Court is where this action should be venued.  Excellus argues that venue does not lie in the District of Minnesota under ERISA's venue provision, 29 U.S.C. § 1132(e)(2).  Excellus further argues that, even if venue does lie in Minnesota, the action should nevertheless be transferred to New York pursuant to the Plan's forum-selection clause.  Excellus's arguments will be addressed in turn.

ANALYSIS

A.      *Motion to Dismiss*

Excellus argues that this action should be dismissed under Fed. R. Civ. P. 12(b)(3) or transferred under 28 U.S.C. § 1406(a) because venue does not lie under ERISA's venue provision.  That provision — found in 29 U.S.C. § 1132(e)(2) — reads as follows:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

*Id.* Although the complaint includes non-ERISA claims, the Schoemanns seem to agree that this is essentially an ERISA action. The Schoemanns do not argue that venue is proper under anything other than the ERISA venue provision, and their attorney conceded at oral argument that, if venue is not proper under ERISA's venue provision, this action will have to be dismissed or transferred.

The Schoemanns assert that venue lies in the District of Minnesota under § 1132(e)(2) because this is "where the breach took place" and because this is "where [the] defendant resides or may be found." Determining "where the breach took place" for purposes of § 1132(e)(2) is not easy. The Schoemanns suggest that a breach of a plan takes place wherever a beneficiary lives or receives treatment — in this case, Minnesota. Excellus counters that a breach of a plan takes place only where the decision to deny coverage is made — in this case, New York. The case law does not provide a clear answer. *Compare Cole v. Cent. States Se. and Sw. Areas Health and Welfare Fund*, 225 F. Supp. 2d 96, 98 (D. Mass. 2002) (breach took place where payment was to be received), *Bostic v. Ohio River Co. (Ohio Div.) Basic Pension Plan*, 517 F. Supp. 627, 636-37 (S.D. W. Va. 1981) (same), *and Stumpf v. Med. Benefits Adm'rs*, 2001 WL 1397326, at *2 (D. Neb. March 14, 2001) (breach of fiduciary duty took place where beneficiary claimed she was denied benefits), *with Seitz v. Bd. of Trs. of the Pension Plan of the N.Y. State Teamsters Conference Pension and Ret. Fund*, 953 F. Supp. 100, 102 (S.D.N.Y. 1997) (breach took place where pension benefit claims are processed), *Turner v. CF&I Steel Corp.*, 510 F. Supp. 537, 541 (E.D. Pa. 1981) (breach took place either where decisions regarding payment

-4-

amounts were made or where checks originated), *and Boyer v. J.A. Majors Co. Employees' Profit Sharing Plan*, 481 F. Supp. 454, 459 (N.D. Ga. 1979) (breach took place where trustee bank issued stop payment order on check).

The Court is skeptical of Excellus's argument that, for purposes of ERISA's venue provision, a breach takes place where the decision to deny coverage is made. Such an interpretation would mean that a beneficiary in the position of the Schoemanns would be forced to file suit in one of four locations: (1) the district where the plan is administered — usually the district in which the defendant maintains its headquarters; (2) the district where the breach took place — which, under Excellus's interpretation, would often (although not always) be the district in which the defendant maintains its headquarters; (3) the district where the defendant resides — usually the district in which the defendant maintains its headquarters; and (4) the district where the defendant may be found — the most obvious such district being the district in which the defendant maintains its headquarters. It is hard to believe that Congress intended that the ERISA venue provision be skewed so heavily in favor of defendants and so heavily against beneficiaries. *See Varsic v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 607 F.2d 245, 247-48 (9th Cir. 1979) (discussing reasons why Congress intended ERISA's venue provision to be "liberal").

Fortunately, the Court need not reach the question of where a breach takes place for purposes of § 1132(e)(2), because it is clear that Excellus "may be found" in Minnesota, and thus that venue is appropriate here. The Schoemanns argue that, under § 1132(e)(2), a defendant "may be found" in any district in which a court could exercise personal jurisdiction over the defendant. That cannot be true, though. ERISA has been held to authorize nationwide service of

process.  *See, e.g.*, *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 825 (5th Cir. 1996).  Assuming that those decisions are correct, as long as a defendant has minimum contacts with *the United States of America* — that is, with the nation as a whole — *any* federal district court could exercise personal jurisdiction over the defendant.  *Cf. In re Fed. Fountain, Inc.*, 165 F.3d 600, 601-02 (8th Cir. 1999) (finding personal jurisdiction under the Bankruptcy Code because defendant was admittedly present in United States territory).  Congress could not have intended that the "may be found" clause of § 1132(e)(2) place venue in every federal district in America, as that would render the other clauses superfluous.  *See Waeltz v. Delta Pilots Ret. Plan*, 301 F.3d 804, 808 (7th Cir. 2002) ("To allow venue wherever personal jurisdiction exists would allow nationwide venue, because § 1132(e)(2)'s nationwide service of process clause creates nationwide jurisdiction.  If such were the intent of Congress, there would have been no reason for Congress to provide specifically for venue where a plan is administered or where a breach took place.").

     Rather than adopt the Schoemanns' interpretation, the Court finds that, for purposes of § 1132(e)(2), a defendant "may be found" in any federal district with which the defendant has sufficient "minimum contacts" to permit a court of that *state* to exercise personal jurisdiction under *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.  *Cf.* Fed. R. Civ. P. 4(k)(1)(A) ("Service of a summons . . . is effective to establish jurisdiction over the person of a defendant who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.").  This appears to be the approach taken by most courts that have interpreted the phrase "may be found" in § 1132(e)(2).  *See, e.g.*, *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 646 (6th Cir. 2006) (for ERISA venue purposes, a defendant

"may be found" in any district in which its minimum contacts would support the exercise of personal jurisdiction); *Waeltz*, 301 F.3d at 810 (for ERISA venue purposes, a defendant "may be found" in a district "if it has the sort of 'minimum contacts' with that district that would support the exercise of personal jurisdiction under the rule of [*International Shoe*].").

The Court finds that there are adequate contacts between Excellus and Minnesota to permit a Minnesota state court to exercise personal jurisdiction over Excellus in a lawsuit relating to Excellus's denial of coverage to the Schoemanns.  Excellus administered a plan that insured the Schoemanns, residents of Minnesota.  Excellus thus voluntarily assumed legal obligations to Minnesota citizens under the terms of its Plan and under ERISA.  Excellus's coverage decisions had a direct impact on the Schoemanns while they were living in Minnesota.  Excellus had numerous contacts with the Schoemanns while they resided in Minnesota, and Excellus even designated BlueCross BlueShield of Minnesota to accept bills and make payments on its behalf.

Whether Excellus's contacts with Minnesota are sufficient to permit a Minnesota state court to exercise general jurisdiction is unclear, but it is also irrelevant.  The Schoemanns' lawsuit arises out of the contacts that Excellus had with Minnesota, and thus a Minnesota state court presiding over that lawsuit would have specific jurisdiction over Excellus.  No matter how few a defendant's contacts with a state, specific jurisdiction usually exists when a plaintiff's claims arise out of or are closely connected to those contacts.  *See, e.g., Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280 (8th Cir. 1991).

In short, because Excellus has sufficient "minimum contacts" to permit a Minnesota state court to exercise personal jurisdiction in this case, Excellus "may be found" in the District of Minnesota for purposes of § 1132(e)(2).

B.    *Motion to Transfer*

That is not the end of the matter.  Excellus argues that, even if venue lies in Minnesota under ERISA's venue provision, this action should nevertheless be transferred to the Western District of New York under 28 U.S.C. § 1404(a).  Excellus primarily relies on the forum-selection clause found in the Plan's Certificate of Coverage.  That clause provides:

> If a dispute arises under this Contract, it must be resolved in a court located in the State of New York.  You agree not to start a lawsuit against us in a court anywhere else.

Cox Aff. Ex. A at 37, ¶ 7.

Under § 1404(a), a district court is authorized to transfer a civil action "[f]or the convenience of parties and witnesses" and "in the interest of justice."  Courts have sometimes developed elaborate, multi-factor tests in considering § 1404(a) motions, but the analysis always centers on the three factors that are mentioned in the text of the statute:  the convenience of the parties, the convenience of the witnesses, and the interests of justice.  *See Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).

The Schoemanns argue that these factors weigh against transferring the case to New York.  The Schoemanns begin by asserting that their choice of forum is entitled to deference.  It is true that, as a general matter, a plaintiff's choice of forum deserves deference.  *See Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999).  It is also true that a party seeking transfer bears the burden of showing that the balance of § 1404(a) factors "strongly"

favors the alternative forum.  *See United Mortgage Corp. v. Plaza Mortgage Corp.*, 853 F. Supp.

311, 315 (D. Minn. 1994).  But these presumptions may carry somewhat less weight when, as

here, the plaintiffs do not reside in the district in which they sued.  *Cf. Iragorri v. United Techs.*

*Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (en banc) (plaintiffs who file suit in a district where they

do not reside are only entitled to deference to the extent legitimate considerations, such as

convenience and jurisdiction over the defendant, motivated them); *Graff*, 33 F. Supp. 2d at 1121

(plaintiff's choice of forum is entitled to particular deference where plaintiff resides in that

district); *see also* 15 Wright, Miller & Cooper, *Federal Practice & Procedure* § 3849 (2d ed.

1986).

　　　　The Schoemanns further argue that litigating in New York will inconvenience them and

their witnesses.  According to the Schoemanns, flying to New York is more difficult for them

than flying to Minnesota.  (It is not clear why.)  Moreover, the Schoemanns assert that family

and friends are available to provide free daycare in Minnesota, but not in New York.  As for

witnesses, the Schoemanns assert that most of those who treated Jackson live in Minnesota.  If

they were called to testify in New York, the Schoemanns would have to pay their travel

expenses.

　　　　This argument is not compelling.  As the Schoemanns themselves admit, "this matter will

more likely than not be decided on the administrative record."  Pls.' Mem. Opp. Mot. Dismiss or

Transfer Venue 17.[1]  In ERISA benefit-denial cases, "additional evidence gathering is ruled out

on deferential review, and discouraged on de novo review to 'ensure expeditious judicial review

---

　　　　[1]The Schoemanns have also pled non-ERISA claims, which substantially overlap with
their ERISA claims.  They have not asserted that those claims will involve much if any evidence
that is not contained in the administrative record.

of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators.'" *Brown v. Seitz Foods, Inc. Disability Benefit Plan*, 140 F.3d 1198, 1200 (8th Cir. 1998) (quoting *Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641-42 (8th Cir. 1997)). Even where review is de novo, plaintiffs must show good cause to submit additional evidence. *Brown*, 140 F.3d at 1200.

At this stage, it appears likely that the Schoemanns' ERISA claims will be reviewed under an abuse-of-discretion standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 114-15 (1989) (denial of benefits under ERISA plan that gives administrator discretionary authority to determine eligibility or construe plan terms is reviewed under "arbitrary and capricious" standard); Cox Aff. Ex. A at 37, ¶ 12 (stating that the Plan's determination with respect to eligibility or construction of Plan terms is binding on participants unless such determinations or constructions are "arbitrary or capricious"). If that is the case, plaintiffs will be foreclosed from presenting additional evidence. *See Brown*, 140 F.3d at 1200. It is thus likely that neither the Schoemanns nor those who treated Jackson will testify in court. Indeed, it is likely that this case will be decided on cross-motions for summary judgment.

At oral argument, however, the Schoemanns contended that they may be able to show that the administrative record is incomplete or inaccurate, giving them the right to submit additional evidence. The Schoemanns have not provided specifics; for example, the Schoemanns identified the medical personnel who treated Jackson as witnesses relevant to their claims, but did not explain why any evidence from these witnesses would not already be reflected in the administrative record. *See id.* (no good cause where plaintiff could have timely provided additional evidence to plan administrator). Indeed, in light of the nature of the

Schoemanns' legal claims (which focus on the alleged arbitrariness and unfairness of decisions made by Excellus employees), and in light of the Schoemanns' intention to challenge the accuracy of the administrative record compiled by Excellus, if any witnesses are called, those witnesses will most likely be employees of Excellus living in New York.  That fact militates in *favor* of transferring the case.

Finally, the Schoemanns contend that the interests of justice are best served by leaving the case in Minnesota, because this case presents questions of federal law, which this Court can apply as easily as any other federal district court.  While that is true, it merely demonstrates that the interests of justice do not weigh on either side of the issue here.

For these reasons, in the absence of a forum-selection clause, the Court would find that the § 1404(a) factors do not weigh heavily for or against transfer, and the Court would honor the Schoemanns' choice of a Minnesota forum.  Unfortunately for the Schoemanns, though, this case does involve a forum-selection clause — a clause that requires "a dispute [that] arises under this Contract" to be "resolved in a court located in the State of New York."  Cox Aff. Ex. A at 37, ¶ 7.  Excellus relies principally on this clause in moving to transfer the case to the Western District of New York.[2]

---

[2]Excellus also argues that it would be proper for the Court to dismiss the Schoemanns' complaint under Fed. R. Civ. P. 12(b)(6) based on the forum-selection clause.  In light of the delay that the parties have already experienced due to this motion being set for argument before one judge, and then set for argument a second time following the reassignment of this case to another (newly-appointed) judge, transfer seems fairer than dismissal.  *See Holm v. Art Leather Mfg., Inc.*, 2006 WL 1662722, at *1 (D. Minn. June 12, 2006) ("Because transferring this case would be more efficient than dismissing it, in the interest of justice, the Court will consider only Art Leather's motion to transfer under 28 U.S.C. § 1404(a).").

"[A] valid and applicable forum selection clause in a contract is 'a significant factor that figures centrally in the district court's calculus.'"  *Terra Int'l, Inc.*, 119 F.3d at 691 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).  There is no reason to regard the forum-selection clause in the Excellus Plan as "invalid."  There is no hint of fraud or overreaching, nor is there any reason to believe that the forum-selection clause was included for improper reasons.  Here a New York insurer and a New York employer agreed to have disputes that arose under their contract decided in New York.  The benefits to both parties are obvious and legitimate (as described below).  The forum-selection clause is just as obviously "applicable."  The dispute between the Schoemanns and Excellus over the coverage of Jackson's treatment clearly "arises under this Contract."

The Schoemanns argue, though, that this particular forum-selection clause should be disregarded because it is found in a welfare-benefit plan governed by ERISA.  The Schoemanns point out that they were not parties to the contract between Excellus and BS&K and thus played no role in negotiating any of the terms of the Plan.  In addition, the Schoemanns contend that enforcing the forum-selection clause would circumvent one of the purposes of ERISA, which is to protect the interests of plan participants by providing ready access to federal court.  *See* 29 U.S.C. § 1001(b).

There is surprisingly little case law on the issue of whether a forum-selection clause in an ERISA plan is enforceable against a plan beneficiary.  The parties and the Court have been able to locate only one decision addressing this precise issue.  In that decision, the forum-selection clause was held to be valid, and the case was transferred pursuant to its terms.  *See Rogal v.*

-12-

*Skilstaf Inc.*, 2006 WL 1821208, at *4 (E.D. Pa. June 26, 2006) (granting motion to transfer based on forum-selection clause against an ERISA plan participant).

In the Court's view, the Schoemanns have provided good reason for giving a forum-selection clause in an ERISA plan less weight in a § 1404(a) analysis than a forum-selection clause in a typical commercial contract. True, the Supreme Court and the Eighth Circuit have said that, in analyzing motions to transfer under § 1404(a), a district court must regard a forum-selection clause as a "very important" factor, *Terra Int'l, Inc.*, 119 F.3d at 695, that is entitled to "significant" weight, *Stewart Org., Inc.*, 487 U.S. at 29. But those decisions seem grounded on the assumption that a forum-selection clause represents the views of the parties about the most convenient forum to litigate future disputes. Consider, for example, the following statement in *Stewart*:

> In its resolution of the § 1404(a) motion in this case, . . . the District Court will be called on to address such issues as the convenience of a Manhattan forum given *the parties' expressed preference for that venue*, and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power. The flexible and individualized analysis Congress prescribed in § 1404(a) thus encompasses consideration of the *parties' private expression of their venue preferences*."

*Id*. at 29-30 (emphasis added).

When a plaintiff sues a defendant, and the defendant seeks to enforce a forum-selection clause that was negotiated between the plaintiff and the defendant, it makes sense to refer to the forum-selection clause as reflecting the "preference" of the parties for the venue identified in the clause. But when, as here, the contract was negotiated between a plan administrator and an employer, the forum-selection clause obviously does not reflect any "preference" of the

beneficiaries.  Indeed, it is likely that a typical beneficiary does not even know that the forum-selection clause exists.

Perhaps, then, a forum-selection clause in an ERISA plan should be entitled to less weight than other forum-selection clauses when parties move to transfer under § 1404(a).  But the Schoemanns go much further; they essentially ask this Court to declare that all forum-selection clauses in ERISA plans are invalid as a matter of law.  The Court cannot agree.  Nothing in ERISA compels that result, nor has any federal court reached that conclusion (as far as this Court knows).

It is true, as the Schoemanns argue, that beneficiaries of employer-sponsored ERISA plans are generally not parties to the contract and play no role in negotiating the contract.  But the contract nevertheless defines the rights and obligations of the plan administrator and the beneficiaries.  In bringing this suit, the Schoemanns claim rights under the Plan against Excellus.  They must take the bad with the good.

Moreover, a plan administrator and an employer may have legitimate reasons to agree to a forum-selection clause.  A plan administrator (such as Excellus) may propose a forum-selection clause in order to conserve its resources and assure some predictability in the interpretation of its plans.  And an employer (such as BS&K) may agree to such a proposed clause because the cost savings enjoyed by the plan administrator will redound to the benefit of the employer and the beneficiaries (such as the Schoemanns).  The Court finds nothing in the language or purposes of ERISA that renders invalid a forum-selection clause in a welfare-benefit plan.  Unless such clauses are the result of fraud or overreaching, they are entitled to weight

when a court considers a motion to transfer under § 1404(a).  And where, as here, the other

§ 1404(a) factors are a wash, the forum-selection clause is decisive.

ORDER

Based on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED

that:

1.     Defendant Excellus Health Plan, Inc.'s motion to dismiss or transfer [Docket No.

3] is GRANTED in part; and

2.     The Clerk of Court is DIRECTED TO TRANSFER this case to the United States

District Court for the Western District of New York.


 Dated: August  2 , 2006                          s/Patrick J. Schiltz_____
                                                  Patrick J. Schiltz
                                                  United States District Judge